Peggie Porter SILVA, formerly known as Peggie Porter, Plaintiff,

v.

FIRE INSURANCE EXCHANGE, Defendant.

No. CV 85–13–M–CCL.

United States District Court, D. Montana, Missoula Division.

Nov. 14, 1986.

Lon J. Dale, Milodragovich, Dale & Dye, Missoula, Mont., for plaintiff.

Donald Murray, Murphy, Robinson, Heckathorn & Phillips, Kalispell, Mont., for defendant.

## MEMORANDUM AND ORDER

LOVELL, District Judge.

This is a first-party bad faith action arising out of a fire that destroyed a residential premises owned by plaintiff and insured by defendant. The case is before the Court on defendant's motion for summary judgment. Fed.R.Civ.P. 56. The motion has been briefed and argued, and is ripe for disposition.

## I. BACKGROUND

Both parties concede, and the record indicates, that the fire at issue was of incendiary origin. The fire occurred on March 10, 1984. Following receipt of plaintiff's proof of loss statement in early April 1984, defendant denied her insurance claim by letter dated May 8, 1984, on the ground that plaintiff had intentionally caused the fire.

Upon further investigation, defendant paid plaintiff's claim in November 1984. In a writing signed by plaintiff and dated November 26, 1984, she acknowledges "receipt in full for all contract benefits due and owing" under the subject policy of insurance as of November 23, 1984.

Plaintiff commenced this action in January 1985. Jurisdiction is founded on diversity of citizenship. 28 U.S.C. § 1332.

Plaintiff alleges that defendant violated the Montana Unfair Claims Settlement Practices Act, Mont.Code Ann. §§ 33–18–201, et. seq., by various actions including, but not limited to: inadequate investigation of plaintiff's insurance claim; failure to act promptly upon communications from plaintiff with respect to her claim; refusal to settle plaintiff's claim after liability had become reasonably clear; and failure to provide a prompt explanation of the basis on which plaintiff's claim was denied.

Plaintiff alleges that defendant breached the implied covenant of good faith and fair dealing attendant contracts of insurance. Because she alleges defendant acted maliciously, oppressively and in intentional disregard of her limited financial resources, plaintiff seeks punitive as well as general damages.

Defendant moves for summary judgment on the ground it had a reasonably arguable basis in fact and law upon which to initially deny, and ultimately delay, payment of plaintiff's claim. Defendant contends that a wealth of circumstantial evidence discovered in the two months following the fire supported its initial denial of plaintiff's claim.

In defendant's opinion, denial was reasonably prompt. Furthermore, defendant asserts that upon denial of the claim it immediately sought declaratory judgment regarding the respective rights and obligations of the parties to the insurance contract. Defendant contends its conduct in the early stages of the settlement process comported with the practice endorsed by

the Montana Supreme Court in *St. Paul Fire and Marine Insurance Co. v. Cumiskey,* —— Mont. ——, 665 P.2d 223 (1983). Finally, defendant indicates it decided to pay plaintiff's claim only after local law enforcement officials failed to reinstate a prosecution of plaintiff for arson that had been dismissed without prejudice in July 1984. A witness provided certain corroboration of plaintiff's alibi, and defendant reconsidered its position.

## II. DISCUSSION

### A. Applicable Law.

In a diversity case, a federal district court must follow the substantive law of the state in which it sits. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *St. Paul Fire and Marine Insurance Co. v. Weiner,* 606 F.2d 864, 867 (9th Cir.1979). The substantive rights and obligations of the parties to this action are governed by Montana law.

The procedural issues in this case are, of course, governed by the Federal Rules of Civil Procedure. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The question of whether defendant has satisfied the legal standard entitling it to summary judgment is procedural.

### B. Standard for Summary Judgment.

Summary judgment may be granted when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In examining a motion for summary judgment, the court must determine whether any material factual issues exist that can be resolved only through trial. *United States v. Allen,* 578 F.2d 236, 237 (9th Cir.1978). If such issues of fact remain, summary judgment cannot be granted. *Securities and Exchange Commission v. Koracorp Industries, Inc.,* 575 F.2d 692 (9th Cir.1978), *cert. denied,* 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343.

Generally, the court accepts the pleadings of the nonmoving party as true on their face. However, this situation changes when the movant supports its motion for summary judgment with sufficient affidavits or other evidence. Fed.R.Civ.P. 56(e). The nonmoving party then is required to set forth specific facts showing that there is a genuine issue for trial.

### C. The Substantive Montana Law.

In the instant case, defendant argues it had a reasonable basis in law and fact upon which to deny (or delay) payment of plaintiff's insurance claim. Defendant asserts that substantial circumstantial evidence linked plaintiff with the arson-caused fire and justified its decision in May 1984 to deny her claim.

Throughout briefing and argument, defendant has taken the position that an insurer cannot be held liable for bad faith, as a matter of law, if it had a reasonably arguable basis for refusal of the insured's claim. If there was any doubt that the lawful basis for refusal standard has been adopted in Montana, such doubt was removed by the Montana Supreme Court's recent decision in *Britton v. Farmers Insurance Group,* —— Mont. ——, 721 P.2d 303, 306 (1986).

In *Britton,* the Montana court emphasized that insurers must have "broad freedom ... to evaluate claims under (their policies) and to reject nonmeritorious claims." 721 P.2d at 306. On the other hand, insurers have the corresponding duty to use diligence in reviewing and determining meritorious claims. *Id. See also Weber v. Blue Cross of Montana,* 196 Mont. 454, 643 P.2d 198 (1982).

The *Britton* decision clearly and concisely sets forth two facets of applicable Montana law that are critical to resolution of plaintiff's claims against defendant in this case:

(1) If the insurer reasonably suspected that plaintiff committed arson, it could decline to pay her claim without risk of incurring a judgment for "bad faith," even though a court or jury might later determine that the arson by the insured was not proved; and

(2) If the insurer unreasonably declined to pay plaintiff's claim, and failed to prove her arson, it could be subject to "bad faith" charges if it also violated public policy or breached the implied duty of good faith and fair dealing in so doing.

721 P.2d at 307.

■ The court now turns to the Montana law specifically governing an insurer's reliance on arson as the basis upon which to deny an insurance claim. It is clear that an insured who deliberately sets, or causes to be set, a fire resulting in damage to the insured premises cannot collect the proceeds of an insurance policy providing coverage for loss by fire. *See, e.g., Cumiskey,* 665 P.2d at 227. Where the insured commits or is responsible for arson, the insurer has a valid defense to the insurance claim. *Id. See also* 5 Appleman's Insurance Law and Practice, § 3113 (1970). Furthermore, arson on the part of the insured need not have been established conclusively at the time the insurer denies a claim if the insurer had a reasonable basis to believe the insured was culpable. *Britton,* 721 P.2d at 307. Ordinarily, the question of reasonableness is one of fact for a jury. The court will determine that an insurer's conduct or belief was reasonable only in the absence of a genuine issue of fact.

### D. Discussion.

In the instant case, plaintiff denies she was responsible for the incendiary fire that destroyed her residence. Additionally, no court or jury has ever determined that plaintiff committed arson. At the time it denied plaintiff's claim, defendant based its decision not on any criminal conviction for arson, but solely upon its belief that plaintiff intentionally set, or caused to be set, the fire of March 10, 1984.

The record contains no direct evidence that plaintiff caused the fire at issue. Similarly, defendant had no such direct evidence at the time it denied plaintiff's insurance claim.

■ Arson, however, may be established by circumstantial evidence. *Moun-*

*tain West Farm Bureau Mutual Insurance Co. v. Girton,* —— Mont. ——, 697 P.2d 1362, 1364 (1985). A prima facie case of arson by the insured is shown if there is (1) arson by someone; (2) motive by the insured; and (3) unexplained surrounding circumstantial evidence implicating the insured. *Britton,* 721 P.2d at 317, *citing Lawson v. State Farm Fire and Casualty Insurance Co.,* 41 Colo.App. 362, 585 P.2d 318 (1978). The insurer may rely on circumstantial evidence alone to prove its defense of incendiarism, but the evidence should do more than throw a mere suspicion of guilt on the insured. The insurer may not rely on speculation alone. However, a preponderance of the evidence is sufficient to establish the arson. *Britton,* 721 P.2d at 317, *citing Great American Insurance Co. v. K & W Log, Inc.,* 22 Wash.App. 468, 591 P.2d 457 (1979).

In reviewing the evidence relevant to defendant's motion for summary judgment, the Court is mindful of the holding in *Britton* that an insurer's reliance on inadmissible evidence of arson by the insured in declining payment of the insured's loss does not meet the standard of a lawful basis for refusal. 721 P.2d at 315–16. As the court stated in *Britton,* it is "not within the bounds of the duty of good faith between an insurer and the insured for the insurer to rely on a rumor, hearsay … or other inadmissible evidence to deny a loss under a fire insurance policy." 721 P.2d at 316.

■ The question of the insured's arson is an affirmative defense. As such, the burden of proof is on the insurer.

■ The first element of prima facie case of arson by the insured is proof of arson by someone. The identity of the arsonist is not a requisite element in proving the insured's responsibility. *See, e.g., Mountain West Farm Bureau,* 697 P.2d at 1363.

■ The state fire marshal's office found that a flammable liquid had been used to accelerate the fire that destroyed

the insured premises. No evidence was found to support the theory that the fire was of accidental origin. The fire marshal and the Sanders County Sheriff's office both concluded the fire was arson-caused. Plaintiff does not dispute the fact that the fire was of incendiary origin.

The second element of the insurer's arson defense to payment of plaintiff's claim is motive by the insured. Defendant alleges that plaintiff's motive was financial gain, contending that the premises destroyed by fire were substantially overinsured.

Relying primarily on plaintiff's own deposition, defendant contends that its insured was under financial pressure at the time of the fire in question. Plaintiff indicated her residence had been up for sale since 1981. The real property was listed with various realtors in the Thompson Falls area, with an asking price of about $32,000. In November 1983 the residence had not sold and plaintiff's former spouse assigned his interest in the property to plaintiff. She did not list the property with a real estate agency after November 1983, but indicated that the residence and the two lots on which it was located remained on the market "by word of mouth." At that time, plaintiff expected a selling price of about $30,000. The property was encumbered by a mortgage of approximately $10,000. It was insured for $50,000.

Based on these facts, defendant calculates that a sale of the insured premises on plaintiff's terms would have netted her some $20,000. Defendant emphasizes the fact the property had not sold for more than two years. Total loss by fire, according to defendant netted plaintiff some $40,-000. As further evidence of overinsurance, defendant indicates plaintiff carried coverage for personal property in the amount of $27,500. On the proof of loss submitted after the fire, plaintiff could show only some $13,000 worth of personal property.

Defendant also identifies the following indicators of financial pressure on plaintiff at the time of the fire: limited income; unpaid property taxes for the years 1981- 83; no child support for her three children; and the fact that renters who previously had covered the mortgage payments on the insured premises moved away in the fall of 1983.

Plaintiff counters defendant's arguments with respect to motive by pointing to damage estimates of about $40,000 secured by defendant after the fire. Plaintiff contends that since Montana is a valued policy state, she and the insurer had to agree on the value of the insured improvements to the real property. Plaintiff asserts that this value becomes the face value of the policy after defendant deducts 20 percent of the appraised value. Therefore, plaintiff contends the premises were not overinsured. Plaintiff also states that shortly before the fire, defendant offered her an optional inflation rider to her policy which would have increased its face amount. Furthermore, plaintiff states that her former spouse, her employer, and her current spouse (and former boyfriend) all were interviewed by defendant after the fire and all indicated that she was not in financial difficulty.

Motive is often a rather elusive concept. Ordinarily, it is a question of fact for the jury. Can it be said that there exists no issue of fact concerning possible motive by plaintiff for setting the March 10, 1984, fire? I think not.

The third element of a prima facie case of arson by the insured is unexplained surrounding circumstantial evidence implicating the insured. Without going into great detail, the circumstantial evidence identified by defendant includes the following facts: (1) plaintiff and her former husband collected on a previous fire insurance policy, obtaining payment with relative ease; (2) plaintiff was the last known person to leave the premises; (3) plaintiff locked the residence upon leaving and it was locked when the fire was discovered; (4) plaintiff and her children were away from the residence for the weekend; (5) no evidence of forced entry was discovered; (6) whoever set the fire had been inside the residence with a container of gasoline; (7) plaintiff

lied to investigators from the state fire marshal's office and to defendant as to her whereabouts at the time of the fire; (8) plaintiff possessed the only keys to the residence; (9) plaintiff had borrowed a container of gasoline from a friend a few days before the fire; (10) Sanders County officials advised defendant soon after the fire that plaintiff was the prime suspect in an arson investigation and would be charged with that offense; (11) plaintiff had removed her stereo from the residence and had replaced it with a friend's less-valuable stereo a few days before the fire, but had included her own stereo in her insurance claim; and (12) plaintiff had removed a number of photographs of her children from her residence the day before the fire.

Unexplained circumstances of this type may sustain a finding of arson by the insured. *See, e.g., Mountain West Farm Bureau,* 697 P.2d at 1364. Of course, the county attorney's speculation that plaintiff was the arsonist, or that she was responsible for the fire, would be inadmissible as evidence and cannot be used to support the "reasonableness" of defendant's denial of plaintiff's claim. *Britton,* 721 P.2d at 317.

Plaintiff argues that witnesses can place her away from her residence at the time of the fire. Presence, however, is not a requisite element in proving her responsibility. *Mountain West Farm Bureau,* 697 P.2d at 1363. Still, presence at the scene, or absence from it, is a factor that the trier of fact could weigh in reaching a verdict.

Plaintiff also points out that one of defendant's investigators knew of a means of access to the residence other than the locked doors. With respect to her statements as to her whereabouts at the time of the fire, plaintiff explains that she initially lied to investigators in order to keep the fact she had stayed out all night from her children.

This is a close question. Defendant presents strong evidence to support its actions and its affirmative defense. In ruling on a motion for summary judgment, however, the court should not engage in a weighing of the evidence. That function is reserved for the jury. Technically a fact issue exists as to the element of motive. Similarly, there is a factual issue as to the weight of the surrounding circumstantial evidence advanced by defendant to support its affirmative defense. The existence of issues of material fact preclude entry of summary judgment. A different result could conceivably be reached at trial when the court considers the law and the evidence on motion for directed verdict. Fed. R.Civ.P. 56(c).

For the reasons stated above,

IT IS ORDERED that defendant Fire Insurance Exchange's motion for summary judgment is DENIED.