Timothy S. HUFF, Plaintiff–Appellant,

v.

John I. TIPTON, Executive Director of the Department of Revenue for the State of Colorado, Defendant–Appellee.

No. 90CA1846.

Colorado Court of Appeals, Div. II.

March 28, 1991.

James L. Treece, Treece & Bahr, Littleton, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Thomas D. Fears, Asst. Atty. Gen., Denver, for defendant-appellee.

Opinion by Judge SMITH.

Plaintiff, Timothy Huff (taxpayer), appeals the trial court's order dismissing his complaint for declaratory and injunctive relief against defendant, John Tipton, Executive Director of the Department of Revenue (department). We affirm.

The facts are not in dispute. In February 1989, taxpayer was arrested for unlawfully possessing and distributing a controlled substance. In March, he received a notice of deficiency from the department informing him that he was being assessed $2,000 in tax and $20,000 in penalty in accordance with § 39–28.7–101, et seq., C.R.S. (1990 Cum. Supp.), the Controlled Substances Tax.

Taxpayer did not attempt to protest the notice of deficiency under § 39–21–103, C.R.S. (1982 Repl.Vol. 16B). Rather, seven days prior to the expiration of the protest period under § 39–21–103, he filed the complaint at issue here, seeking a judicial determination that the controlled substances tax was unconstitutional and an order enjoining the department from collecting and enforcing the tax and penalty.

The department moved to dismiss taxpayer's complaint. The department argued that the administrative procedures set out in § 39–21–101, et seq., C.R.S. (1982 Repl. Vol. 16B) provided the exclusive method for challenging the department's assessment and for securing judicial review and that taxpayer's failure to pursue these procedures deprived the court of jurisdiction to hear taxpayer's complaint. The trial court agreed and the complaint was dismissed.

I.

Taxpayer contends that the trial court erred in dismissing his complaint on jurisdictional grounds. We disagree.

Taxpayer argues that under the clear, plain, and unambiguous language of § 39–21–102, C.R.S. (1982 Repl.Vol. 16B),

the provisions of that statutory article are inapplicable to the levy and collection of the controlled substances tax. Accordingly, he asserts, exhaustion of the administrative remedies provided in that article was not a prerequisite to judicial review of the deficiency tax assessment.

Section 39–21–101, et seq., C.R.S. (1982 Repl.Vol. 16B) (Article 21) deals exclusively with tax procedure and administration. Section 39–21–102, C.R.S. (1982 Repl.Vol. 16B) defines the intended scope of these provisions to the various taxes imposed under the title. At the time of taxpayer's complaint, this section provided:

> "Unless otherwise indicated, the provisions of [Article 21] apply to income, inheritance, gift, gross ton-mile, passenger-mile, gasoline, special fuel, cigarette, sales, use, and severance taxes and the charge on oil and gas production imposed by articles 22 to 29 of this title, article 60 of title 34, and article 3 of title 42, C.R.S. 1973."

Thus, the controlled substances tax is, indeed, not specifically listed among the taxes enumerated in § 39–21–102. Taxpayer argues this omission conclusively establishes the General Assembly's intent not to make the controlled substances tax subject to the provisions of Article 21.

Taxpayer's analysis, however, ignores the *inclusive* language of § 39–21–102 that the provisions of Article 21 apply to taxes "imposed by articles 22 to 29" of Title 39 and that the controlled substances tax, set forth in § 39–28.7–101 et seq., C.R.S. (1990 Cum. Supp.), is clearly a tax which falls within these two articles.

In light of the foregoing, we conclude that § 39–21–102 is susceptible to more than one interpretation. Hence, we must refer to accepted rules of statutory construction to determine whether the General Assembly intended the controlled substances tax to be subject to the provisions of Article 21.

When a dispute arises as to meaning of a statute, the court may consider the consequences of the construction urged. *People in Interest of K.M.J.*, 698 P.2d 1380 (Colo.App.1984); § 2–4–203(1)(e) C.R.S. (1980 Repl.Vol. 1B).

Here, taxpayer's interpretation of § 39–21–102 would be fatal to the operability of the controlled substances tax. A review of the provisions establishing the Controlled Substances Tax discloses that while those provisions establish the basis for tax liability, the tax rate, and the department's authority to levy and collect the tax, the statute is devoid of any provisions defining the executive director's powers, and any provisions establishing, either by statute or by regulation, the procedures for assessing or appealing deficiencies. Thus, under taxpayer's interpretation of § 39–21–102, the General Assembly has, through the enactment of the Controlled Substances Tax delegated to the department the unbridled authority to assess and enforce that tax. Such a delegation, absent legislative standards and procedures to insure due process of law, presents insurmountable constitutional barriers which, unmistakably, jeopardize the viability of the tax in question.

Construing § 39–21–102 to encompass the controlled substances tax, however, leads to entirely different consequences. Under this interpretation of the statute, the executive director's authority to levy and collect the tax would be subject to the limitations set forth in § 39–21–112, C.R.S. (1982 Repl.Vol. 1B). Additionally, interpretation of the tax would be governed by statutory procedures which insure a taxpayer notice and an opportunity for a hearing prior to the department's issuance of a final determination of assessment. *See* § 39–21–103, C.R.S. (1982 Repl.Vol. 1B).

Most importantly, however, this construction of § 39–21–102 entitles a taxpayer to the right to seek judicial review of the department's final determination. *See* § 39–21–105, C.R.S. (1982 Repl.Vol. 1B). Also, this construction of § 39–21–102 would harmonize the levy and collection of the controlled substances tax with the administration of other "specific" taxes imposed by Articles 22 to 29.

Despite the disparate consequences of these two interpretations, taxpayer asserts

that the court cannot interpret § 39–21–102 to encompass the controlled substances tax. To do so, he argues, would constitute an improper extension of a legislative enactment by construction. *See Rancho Colorado, Inc. v. Broomfield,* 196 Colo. 444, 586 P.2d 659 (1978). We disagree.

If, as here, the statute is susceptible to more than one interpretation, a court's primary task is to ascertain and give effect to the intent of the General Assembly. *People v. District Court,* 713 P.2d 918 (Colo.1986). And, if, as here, the statute is part of a comprehensive legislative program, it is essential that in ascertaining legislative intent, the balance of the enactments relating to the same subject matter be considered. *Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106 (Colo.1990).

Here, the General Assembly, by its enactment, obviously, intended to levy and collect a new "specific" tax on controlled substances. Moreover, we may presume that it intended to do so in a just and reasonable manner which was both compliant with state and federal constitutions and was administratively feasible. *See* § 2–4–201(1), C.R.S. (1980 Repl.Vol. 1B). Finally, in electing to codify the controlled substances tax in Title 39 between Articles 22 to 29, the General Assembly intended the tax to be characterized as a "specific" tax in the same manner as the other taxes codified in that portion of the statutes.

Interpreting § 39–21–102 to encompass the Controlled Substances Tax clearly promotes the operability of that statute and, thus, effectuates the intent of the General Assembly to create and impose the new tax. Moreover, this interpretation is in harmony with the statutory presumptions of fairness, constitutionality, and feasibility. Lastly, by creating consistency in the otherwise generally uniform administration of the specific taxes, this interpretation integrates the controlled substances tax into the legislative program the General Assembly has established for specific taxes and gives sensible effect to its strategic placement in Title 39.

On the other hand, if we were to interpret the statute as taxpayer urges, it would not only isolate the controlled substances tax from the legislative program on specific taxes, but also it would render the tax unconstitutional and inoperable. A statutory construction that leads to absurd consequences will not be followed. *City of Ouray v. Olin,* 761 P.2d 784 (Colo.1988). Nor will a construction which renders meaningless the language of the statute. *Thiret v. Kautzky,* 792 P.2d 801 (Colo. 1990).

Accordingly, we conclude that the General Assembly intended the controlled substances tax to be subject to the provisions of Article 21 and that § 39–21–102 must be construed consistent with this legislative intent.

Accordingly, the trial court did not err in dismissing taxpayer's complaint on jurisdictional grounds.

The general rule is that a court lacks subject matter jurisdiction over an action if the plaintiff has not exhausted his administrative remedies prior to seeking judicial relief. *Leete v. Colorado Board of Medical Examiners,* 807 P.2d 1249 (Colo.App. 1991). *See Toncray v. Dolan,* 197 Colo. 382, 593 P.2d 956 (1979).

Since it is undisputed here that taxpayer failed to pursue the administrative remedies set forth in Article 21, the court was without jurisdiction to hear taxpayer's complaint.

Because of our disposition of the foregoing issue, it is unnecessary for us to address taxpayer's other contentions of error, all of which relate to the constitutionality of the taxing statute itself.

The judgment is affirmed.

JONES and RULAND, JJ., concur.