24CA0576 Warnick v Court Admin 10-31-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0576
Jefferson County District Court No. 23CV218
Honorable Todd L. Vriesman, Judge

Jonathan Warnick,

Plaintiff-Appellant,

v.

Court Administration of 1st Judicial District and Lori Stenstrom, in her official capacity as Records Custodian,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SCHOCK
Fox and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

Jonathan Warnick, Pro Se

Philip J. Weiser, Attorney General, Kerry Colburn, Senior Assistant Attorney General, Joseph G. Michaels, Assistant Solicitor General, Peter G. Baumann, Assistant Solicitor General, Denver, Colorado, for Defendants-Appellees

¶ 1    Plaintiff, Jonathan Warnick, appeals the dismissal of his complaint under the Colorado Supreme Court's Public Access to Information and Records Rule 2 (PAIRR 2), P.A.I.R.R. 2, filed against the First Judicial District records custodian, and the denial of his motion to amend his complaint.  We affirm the judgment.

## I.    Background

¶ 2    In 2021, Warnick requested several hearing transcripts in a separate domestic relations case in the First Judicial District to which he was a party.  In September 2023, Warnick submitted a request under PAIRR 2 to the State Court Administrator's Office (SCAO) for "the date(s) the transcriber was provided" the recordings of the hearings for which he had requested transcripts.  SCAO redirected Warnick to the First Judicial District for his request.

¶ 3    Warnick then forwarded his request to the First Judicial District.  In his email, he asked for "the dates the transcriber was able to access the recordings" and suggested that such information might be in "a sent email or message log of when the transcriber was notified."  He explained that he was trying to determine "why the transcripts [he] paid for had such a long delay."  The records custodian, Lori Stenstrom, responded the next day, asking Warnick

1

"how long it took [him] to get the transcripts from the time payment was made because sometimes payment can be the holdup."

¶ 4        Warnick said he had paid for the transcripts immediately, so it was "not a payment issue."  He reiterated that he was trying to determine the dates on which the transcriber was "able to access the audio recordings," and he again proposed that Stenstrom "refer to . . . logs or a 'sent items' folder to see when the transcriber was notified that audio was available."  Stenstrom emailed the court reporter to ask for "information regarding why the transcripts weren't produced in 30 days."  She told Warnick she was researching the issue.  Warnick responded by repeating his request.

¶ 5        About a month later, on October 26, 2023, having received no further response, Warnick filed a complaint under PAIRR 2. Section 5(a) of that rule provides that "[a]ny person denied inspection of a record under [PAIRR 2] may petition the district court . . . for an order directing the custodian to show cause why the custodian should not permit inspection of the record."  Warnick alleged that the First Judicial District, through Stenstrom, had "willful[ly] and purposeful[ly] refus[ed] to respond to [his] request for

records."  He requested an order requiring Stenstrom to show cause why she should not be required to permit the requested inspection.

¶ 6     Over the next few months, the First Judicial District worked with Warnick to fulfill his information requests.  On October 29, Warnick submitted a new PAIRR 2 request for the name of the managing court reporter, in 2020 and currently, and the "form to monitor and keep a record of transcript orders and requests."  The First Judicial District provided that information.  Warnick then submitted a request for the "blank" template form and the entries on the form that covered the dates of his transcript requests.  The First Judicial District provided him that information as well.

¶ 7     In January 2024, with no answer to the complaint having yet been filed,[1] Warnick filed a motion to amend his complaint to add four requests for declaratory judgment determining that (1) the audio recordings at issue were delivered to the transcription firm more than twenty-one days after his request; (2)the audio recordings were delivered to the transcription firm after mid-August

_____

[1] SCAO, through the Attorney General's Office, notified the district court shortly after the complaint was filed that it calculated its response deadline as January 19, 2024, under C.R.C.P. 4(e)(10)(C).

2021; (3) the transcription delay was not within his control; and (4) Stenstrom failed to act with reasonable inquiry and reasonable diligence and willfully and purposefully violated PAIRR 2 by failing to adequately respond to Warnick's record requests.

¶ 8    On January 17 and 18, 2024, Stenstrom sent Warnick additional documents including (1) a more complete log of the May 2021 transcript requests showing the "date mailed" column that had been "inadvertently cut off" in the previous screenshot and (2) two May 2021 emails from the First Judicial District to the court reporter transmitting Warnick's transcript requests. Stenstrom explained: "These emails together with the logs we already provided to you are all the records in our possession that show when the requests were sent by our office. We have no records indicating why there was a delay once we sent over the requests."

¶ 9    The next day, the First Judicial District filed its response to the complaint. It asked the district court to "discharge [the] Petition because the First Judicial District [wa]s not withholding any records for inspection, and therefore ha[d] not denied [Warnick's] PAIRR 2 request." The response attached all the communications described above, as well as an affidavit from Stenstrom confirming

4

that she had sent Warnick "all responsive documents maintained by the First Judicial District" and that the First Judicial District had "no further records responsive to [Warnick's] requests."

¶ 10     The district court dismissed the complaint. It explained that a person may pursue a petition under PAIRR 2, section 5(a), only when they have been "denied an inspection of a record." It further concluded that "[t]he allegations in the Complaint and the Response demonstrate that the First Judicial District did not deny [Warnick] the right to inspect a record." Thus, it ruled that because the First Judicial District had indisputably provided all responsive records in its custody and control, Warnick did not have a cause of action.

¶ 11     The district court also denied Warnick's motion to amend the complaint, concluding that the amendment would be futile because "[n]o law . . . allows . . . declaratory relief against the Colorado judicial department or its employees for delays in producing records or for a failure to adequately respond to records requests."

## II.     Dismissal of Complaint

¶ 12     Warnick contends that the district court erred by dismissing his complaint. His primary argument appears to be that he believes there may be other responsive documents that were not provided.

5

Because the undisputed facts indicate that the First Judicial District did not deny Warnick any record, we perceive no error.

¶ 13 PAIRR 2 is a rule promulgated by the Colorado Supreme Court that governs public access to administrative records of the judicial branch. *People in Interest of T.T.*, 2019 CO 54, ¶ 20. Subject to exceptions and limitations, such records generally must be made available for inspection at reasonable times. PAIRR 2, § 2(a). The records custodian must take "reasonable measures" to locate a requested record and ensure public access "without unreasonable delay or unreasonable cost." *Id.* at § 2(b). The custodian *may* deny inspection of certain categories of records when "disclosure would be contrary to the public interest" and *must* deny inspection of certain other enumerated categories of records. *Id.* at § 3(b)-(c).

¶ 14 Any person "denied inspection of a record" under PAIRR 2 may "petition the district court of the district in which the record or the custodian is located for an order directing the custodian to show cause why the custodian should not permit inspection of the record." *Id.* at § 5(a). PAIRR 2 provides no other cause of action.

¶ 15 The undisputed facts establish that Warnick was not denied inspection of any record. Even in his complaint, Warnick alleged

6

only that the First Judicial District had refused to respond to his request, not that it had denied it. And by the time of the court's dismissal, the First Judicial District had responded repeatedly, providing Warnick all the responsive documents it had located. Those documents included (1) the log used to monitor and record transcript requests; (2) the portions of the log addressing Warnick's requests, showing the date of the request and the date the request was mailed to the transcriber; and (3) the emails transmitting those requests. The First Judicial District did not deny Warnick access to any record it identified. *See* PAIRR 2, § 4(b)(2)(B) (providing that the custodian may respond that a record is not available for inspection, and "[i]f the custodian denies access to a record, the requestor may request a written statement of the grounds for the denial").

¶ 16     Warnick asserts that, despite Stenstrom's representation, there might be other documents that were not provided. But he offers no more than his own speculation that such records exist.

¶ 17     First, he challenges the adequacy of the tracking logs, contending that they are deficient because they do not identify the time of the requested hearings. We note that the emails to the transcriber do provide this information. But more to the point,

7

PAIRR 2 simply requires the judicial branch to make records available. *See* PAIRR 2, § 2(a). Nothing in the rule requires the judicial branch to create new records or modify existing ones.

¶ 18 Second, Warnick points out that the emails to the transcriber state, "Audio file to follow." He theorizes that this means there must be some other record out there transmitting the audio file. That is not necessarily true. Among other possibilities, the file could have been provided without the creation of a record (for example, via file download or hard copy). In any event, Warnick's conjecture about what must have happened does not allow us to conclude he was "denied inspection of a record" that the records custodian attested does not exist. *Cf. Citizens Progressive All. v. Sw. Water Conservation Dist.*, 97 P.3d 308, 314 (Colo. App. 2004) (rejecting plaintiff's assertion that "there must have been documents that were not produced" where defendant's general counsel and the paralegal who conducted the records search testified that all responsive documents were produced).

¶ 19 Warnick also complains that the responses to his PAIRR 2 request were unreasonably delayed. To the extent he asserts this alleged delay as a basis for his claim, it fails. PAIRR 2 allows for an

action only when a person has been *denied* inspection of a record. PAIRR 2, § 5(a); *see People v. McLaughlin*, 2023 CO 38, ¶ 23 (explaining that in construing a court rule, "[w]e look to the language of the rule" and, if unambiguous, "apply it as written"). And even assuming an undue delay could be deemed a denial, there is no relief the court could provide, as the sole relief under the rule is an order permitting inspection of the record. *See* PAIRR 2, § 5(a).

¶ 20 Thus, because there is no factual dispute that Warnick was not denied inspection of any record, the district court correctly dismissed the complaint. *Cf. Roane v. Elizabeth Sch. Dist.*, 2024 COA 59, ¶¶ 17, 19 (holding that absent a factual dispute, the district court can decide issue of standing as a matter of law).

## III. Denial of Motion to Amend

¶ 21 Warnick also argues that the district court erred by denying his motion to amend his complaint to add claims for declaratory judgment. But even assuming the district court erred by denying the motion to amend, any error was harmless because the court correctly concluded the proposed amendment would be futile.

¶ 22 Under C.R.C.P. 15(a), a party may amend a complaint once as a matter of course at any time before a responsive pleading is filed.

Warnick filed his motion to amend the complaint before the First Judicial District had filed its responsive pleading. In that motion, Warnick set forth the substance of his proposed amended claims. *See Davis v. Paolino*, 21 P.3d 870, 873 (Colo. App. 2001) (construing plaintiff's motion to amend the complaint filed before a responsive pleading as "setting forth an amended complaint"). So to the extent C.R.C.P. 15(a) applies to a PAIRR 2 petition — a point we do not decide — the amendment should have been permitted. *See id.*

¶ 23 But even so, reversal is not required if the proposed amendment would have been futile. *Id.*; *see also City of Colorado Springs v. Givan*, 897 P.2d 753, 761 (Colo. 1995) (concluding that any error in disallowing amendment to a counterclaim was harmless where court resolved the issue raised in the proposed counterclaim). An amendment is futile if it fails to state a valid legal theory. *Gandy v. Williams*, 2019 COA 118, ¶ 22.

¶ 24 A declaratory judgment action is a procedural mechanism, not a substantive claim. *State v. Hill*, 2023 CO 31, ¶ 10. Thus, to state a claim for declaratory judgment, a party must assert a substantive legal basis on which a claim for relief can be grounded. *Id.*; *see also Wibby v. Boulder Cnty. Bd. of Comm'rs*, 2016 COA 104, ¶¶ 33-34.

¶ 25    Warnick's proposed amendments failed to do so.  To the extent

he sought a declaratory judgment that the First Judicial District

had violated PAIRR 2 in ways other than by denying him inspection

of a record, PAIRR 2 provides no such cause of action, and Warnick

has cited no other substantive law that does.  *See Wibby*, ¶ 34

(rejecting declaratory judgment claim where plaintiffs did not have a

contractual or statutory claim and did not assert any common law

duty).  To the extent Warnick sought declaratory judgments

concerning when the audio recordings were delivered to the

transcription firm and whether any delay was within his control, he

similarly cites no legal basis for those claims.  *Id.* at ¶ 35; *see also*

*Gavrilis v. Gavrilis*, 116 P.3d 1272, 1275 (Colo. App. 2005) (barring

claims that constitute "collateral attacks on dissolution decrees").

## IV.    District Court's Review of Prior Case

¶ 26    Warnick contends that the district court acted improperly and

demonstrated bias by considering information from his underlying

domestic relations case, which is "suppressed."  We disagree.

¶ 27    There is nothing improper about the district court considering

court records in a related proceeding.  *See Harriman v. Cabela's*

*Inc.*, 2016 COA 43, ¶ 64 (noting that district court may take judicial

11

notice of the contents of court records in a related proceeding).  And the only information the district court cited in its order was the number of pleadings and court orders filed in the related case.  That information had no bearing on its ruling (or our review of that ruling), which was correct for the reasons above.  Beyond that ruling, there is no order for us to review.  *See Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 52 (declining to address claims of appearance of bias not raised in district court).  Nor do the facts asserted by Warnick support an inference of actual bias.  *See id.* at ¶¶ 14-15.

## V.    Disposition

¶ 28    The judgment is affirmed.

JUDGE FOX and JUDGE JOHNSON concur.